1
2
3
4
5           IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    AARON JAMES COOK,            )    No. C 03-2719 JSW (PR)
                                  )
9              Petitioner,        )
                                  )
10        vs.                     )    **ORDER DENYING PETITION FOR**
                                  )    **WRIT OF HABEAS CORPUS**
11   JOE MCGRATH, Warden,         )
                                  )
12             Respondent.        )
                                  )
13   _____  )
14
15                    **INTRODUCTION**
16        Aaron James Cook, a state prisoner, has filed a pro se petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  On August 11, 2003  this Court issued an order to

show cause as to why the petition should not be granted (docket no. 5).  Respondent's

answer was filed on January 23, 2004 (docket no. 14).  Petitioner's traverse was filed on

July 26, 2004 (docket no. 15).  After consideration of Petitioner's claims on the merits,

this order denies the petition for writ of habeas corpus.

                 **PROCEDURAL BACKGROUND**

        In 1999, a jury in Santa Clara County convicted Petitioner of inflicting corporal

injury, with a great bodily injury enhancement (Pen. Code § 273.5(a), §12022.7), assault

causing great bodily injury (Pen. Code § 245(a)(1)), and rape (Pen. Code § 261(a)(2)), as

well as misdemeanors for child endangerment (Pen. Code § 273(a)(b) and resisting arrest

(Pen. Code § 148(a)(1)).  Petitioner was found to have suffered two prior "strike"

convictions under Pen. Code § 667, two prior serious felony enhancements under Pen.

Code § 667(a), 1192.7 and to have served three prior prison terms under Pen. Code §

667.5(b).  The trial court sentenced Petitioner to 50 years-to life incarceration plus 14

years.  On direct appeal, the California Court of Appeal, Sixth Appellate District

affirmed the conviction.  The Supreme Court of California denied habeas corpus relief on

March 19, 2003.  Petitioner filed the instant petition on June 11, 2003.

## FACTUAL BACKGROUND

The facts underlying the charged offenses as found by the Court of Appeal of

California, Sixth Appellate District, are summarized below:

> Glenda Turner, the victim, and the defendant had a relationship for several years and have two daughters together.  Although the couple fought about defendant's drinking, and defendant sometimes used or threatened violence against Turner, Turner was never injured by defendant.  Turner explained that during their relationship, she often called the police when she felt like she needed help, even when defendant was not being physically violent.

> Turner testified that later in the relationship she realized she wanted to become more religiously observant; in particular, she wanted to get married to avoid having sexual relations out of wedlock. When defendant was reluctant, she told him she wanted to separate and that he would have to move out.

> Until June 9, 1998, Turner, defendant, and their daughters were living together in San Jose.  On that date, however, defendant was in the process of moving out.  Late that evening or early the next morning, while Turner was asleep in her bedroom, and the children were asleep in their room, defendant came home.  Turner saw him in the living room holding a beer and, concerned about how he might act while drinking, extended her arm and palm to him and may have said something to him about the beer. She then went back to bed and fell asleep.

> The next thing Turner recalled was waking up on the floor.  She was numb, but was bleeding and knew she had been injured because her face was swelling.  Defendant was standing near her naked, talking on the telephone, and trying to stop her bleeding.  Turner heard defendant say "Dad" and assumed he was talking to his father.  She also heard him talk to his mother and say he had beaten Turner "real bad" and needed to take her to the hospital.  He then put the phone to Turner's ear, and defendant's mother asked if she was alright or if she was going to press charges. Turner said she was alright.

> Turner recalled hearing her daughter Tashika trying to comfort her as she lay on the floor.  She told Tashika to go back to her room.  After defendant got off the phone, he offered to take Turner to the hospital.  She declined because she felt he was too intoxicated.

Defendant then told her he wanted "some sex." Although she did not want to have sex in her condition, she did not respond. Turner testified that she and defendant then went into the bedroom, defendant pulled off her clothes, and they had intercourse against her will.[1] Defendant then fell asleep.

Within minutes, Turner got up and called 911. She was scared and asked for help, speaking softly to avoid waking defendant. She hung up while the dispatcher was still talking to her. She said that although the door to Tashika's room was open, she did not enter or speak to Tashika at that time. She denied coaching Tashika on what to tell the police. She also denied that she had been injured before defendant arrived home that night.

Officer Stanley McFadden arrived approximately 5 minutes after Turner's 911 call. He saw Turner stumble as she came out of the door, crying and hysterical. Turner appeared to have been beaten and needed immediate medical attention. She said defendant had beaten her and was still in the back bedroom. McFadden waited for backup officers and together they woke up defendant and told him he was under arrest. He physically resisted arrest, but was ultimately subdued and taken into custody.

As defendant was being taken from the house, McFadden remained inside with Turner, who was being treated by paramedics. McFadden took pictures of her injuries, and after learning there were children present, found Tashika and Ngozi in their bedroom.

Tashika's eyes were puffy, as if she had been crying. When McFadden said hello and asked how she was doing, she was quiet, reluctant to talk, and seemed scared and traumatized. McFadden consoled her, assuring her that Turner was being taken care of and would be okay. Tashika relaxed and McFadden asked what happened. She told McFadden that her Daddy had no clothes on, he pulled Mommy onto the floor, and he was "standing on Mommy's head." McFadden demonstrated a stepping motion, and Tashika said "Daddy was stepping on her face." On cross-examination, McFadden admitted he did not ask Tashika if she had previously spoken to Turner about what happened, or if Turner had told her what to say to the police, or if Tashika knew the difference between the truth and a lie.

---

[1]On direct examination, Turner said that defendant put in his penis into her vagina. She reiterated this on cross-examination, but admitted that she could not distinctly remember him actually doing so. Nevertheless, she said that defendant had sex with her and she was sure he "put it in me." When asked, "But you don't–you can't say for certain that he did," she responded "Right, I can't. I can't." Turner further testified that at the preliminary hearing, she was asked whether defendant put his penis into her vagina, and her response was, "I imagine so. I was out of it, but I imagine he did." On redirect examination, the prosecutor asked, "I know there is some confusion about the penis and vagina, and I'm–I mean–is it fair to say that you don't–you can't tell us exactly when his penis went into your vagina." Turner agreed that she could not but said that this is what she meant when she said he "had sex" with her.

3

Turner's neighbor, Katrina Carter, agreed to take care of Tashika and Ngozi after Turner was taken to the hospital.  Carter testified that Tashika remained sad and worried about Turner.

Dr. Julia Shulesko treated Turner when she arrived at the hospital. Shulesko observed several cuts on her face and inside her mouth, Turner's nose was deformed, and she had bitten her tongue.  Because Turner could not remember when or how the injuries occurred, Shulesko did a CT scan to rule out brain damage.  Although the scan showed no brain damage, it revealed "an orbital fracture, which means a fracture around the eye, nasal bone fractures, and sinus bone fractures."  Dr. Timothy Weibel, a plastic and reconstructive surgeon confirmed the facial fractures and testified that when he saw Turner, she had several open wounds, mostly on the right side of her face.

McFadden spoke to Turner at the hospital, and at that time, she said this was the first time defendant had ever put his hands on her.  She testified that she did not tell police or doctors at the hospital that defendant had forced her to have sex with him.

Yvette Daniels, Turner's friend for over 20 years, came to visit Turner at her home after she returned from the hospital.  Daniels testified that she and Turner spoke by phone the night of June 9, 1998 and had a pleasant conversation.  When Daniels arrived, Turner told her that defendant had beaten her and forced her to have sex with him and then passed out.  Turner said she was afraid to refuse defendant.

After defendant was arrested, Officer Michael Wentling took him to the hospital to have an injury on his hand evaluated.  To Wentling, defendant seemed intoxicated because his speech was slurred, his eyes were red and bloodshot, and he was unsteady on his feet.  At the hospital, defendant first told a doctor he did not know what happened to his hand.  A few minutes later, defendant said that someone slammed the police car door on it.[2]  Later, however, he told a nurse his hand had been injured for a couple of days.

Richard Ferry, a licensed counselor, testified as an expert on domestic violence and battered woman's syndrome.  Ferry also testified concerning the effects of domestic violence on children.

In defense, defendant's mother Christine Cook testified that on the night of June 9, 1998, she was at her granddaughter's birthday, when she received a call from her other son Paul, who was at her house.  He told her that defendant had called and that "something was wrong."  Sometime after midnight, Cook called defendant back.  She denied that he told he had beaten Turner.  Cook said she repeatedly asked Turner what was wrong, but Turner said "nothing," "I can handle it," and "I'll be all right."  Turner did not say that defendant had beaten her.  Cook could not recall whether she told an investigator that Turner had said she would "survive."

---

[2]Wentling testified that he did not see anyone slam a car door on defendant's hand.

4

1  However, the parties entered into a stipulation that a witness would testify
2  that, in a telephone interview on August 11, 1998, Cook said that Turner
   told her "I'll be all right and I'll survive."

3  *People v. Cook*, No. 207515, slip op. at 1-8 (Cal. Ct. App.) (Pet., Ex. A).

4  ## STANDARD OF REVIEW

5  This Court may entertain a petition for a writ of habeas corpus "in behalf of a

6  person in custody pursuant to the judgment of a state court only on the ground that he is

7  in custody in violation of the Constitution or laws or treaties of the United States."  28

8  U.S. § 2254(a).  A district court may grant a petition challenging a state conviction or

9  sentence on the basis of a claim that was "adjudicated on the merits" in state court only if

10 the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to,

11 or involved an unreasonable application of, clearly established Federal law, as

12 determined by the Supreme Court of the United States; or (2) resulted in a decision that

13 was based on an unreasonable determination of the facts in light of the evidence

14 presented in the State court proceeding."  28 U.S.C. § 2254(d).

15 Under the 'contrary to' clause, a federal habeas court may grant the writ if the

16 state court arrives at a conclusion opposite to that reached by the Supreme Court on a

17 question of law or if the state court decides a case differently than the Supreme Court has

18 on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413

19 (2000).  Under the 'unreasonable application' clause, a federal habeas court may grant

20 the writ if the state court identifies the correct governing legal principle from the

21 Supreme Court's decisions but unreasonably applies that principle to the facts of the

22 prisoner's case.  *Id.*  As summarized by the Ninth Circuit: "A state court's decision can

23 involve an 'unreasonable application' of federal law if it either 1) correctly identifies the

24 governing rule but then applies it to a new set of facts in a way that is objectively

25 unreasonable, or 2) extends or fails to extend a clearly established legal principle to a

26 new context in a way that is objectively unreasonable."  *Van Tran v. Lindsey*, 212 F.3d

27 1143, 1150 (9th Cir. 2000)(citing *Williams*, 529 U.S. at 405-07), *overruled on other*

28

1   *grounds, Lockyer v. Andrade*, 538 U. S. 63, 70-73 (2003).

2        "[A] federal habeas court may not issue the writ simply because that court

3   concludes in its independent judgment that the relevant state-court decision applied

4   clearly established federal law erroneously or incorrectly.  Rather, that application must

5   also be unreasonable." *Williams*, 529 U.S. at 411.; *accord Middleton v. McNeil*, 541

6   U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing

7   federal law must not only be erroneous, but objectively unreasonable); *Woodford v.*

8   *Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not

9   equivalent to "incorrect" application of law).

10        In deciding whether a state court's decision is contrary to, or an reasonable

11   application of, clearly established federal law, a federal court looks to the decision of the

12   highest state court to address the merits of petitioner's claim in a reasoned decision.

13   *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

14                                        **DISCUSSION**

15   **I.    Hearsay Statements**

16        Petitioner contends that it was error for the trial court to allow Officer McFadden

17   to testify at trial regarding the hearsay statements Tashika made to him after the assault

18   under the "excited utterance" exception to the hearsay rule.  Tashika was found

19   incompetent to testify at trial because she could not tell the difference between the truth

20   and a lie.  Petitioner claims that Tashika's statements did not fit into the firmly rooted

21   hearsay exception as excited utterances; Tashika was not unavailable within the meaning

22   of the meaning of the California Evidence Code; and that the admission of the statements

23   violated Petitioner's right to confrontation because the statements did not have sufficient

24   indicia of reliability.

25        a.    Legal Standard

26        The Confrontation Clause of the Sixth Amendment provides that in criminal cases

27   the accused has the right to "be confronted with witnesses against him."  U.S. Const.

28                                            6

amend. VI.  The federal confrontation right applies to the states through the Fourteenth

Amendment.  *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

The ultimate goal of the Confrontation Clause is to ensure reliability of evidence,

but it is a procedural rather than a substantive guarantee.  *Crawford v. Washington*,

541 U.S. 36, 61 (2004).  It commands, not that evidence be reliable, but that reliability be

assessed in a particular manner: by testing in the crucible of cross-examination.  *Id.*; *see

Davis v. Alaska*, 415 U.S. 308, 315 (1974) (a primary interest secured by the

Confrontation Clause is the right of cross-examination).

The Confrontation Clause applies to all "testimonial" statements.  *Crawford*, 541

U.S. at 50-51.  Interrogations by law enforcement officers often produce testimonial

statements.  *Davis v. Washington*, 126 S.Ct. 2266, 2273 (2006).  "Statements are

nontestimonial when made in the course of police interrogation under circumstances

objectively indicating that the primary purpose of the interrogation is to enable police

assistance to meet an ongoing emergency."  *Id*. at 2273-74.  In contrast, statements are

testimonial "when the circumstances objectively indicate that there is no such ongoing

emergency, and that the primary purpose of the interrogation is to establish or prove past

events potentially relevant to later criminal prosecution."  *Id.*  In *Davis*, a victim's

statements made to a 911 dispatcher during an ongoing domestic assault were found to

be nontestimonial.  *Id*. at 2276-77.  However, the Court found testimonial a victim's

responses to police interrogation, given when the victim and defendant had been

separated into different rooms, and the police had not heard any arguments or physical

fighting since arriving.  *Id*. at 2278-79.

Under *Crawford*, "[t]estimonial statements of witnesses absent from trial have

been admitted only where the declarant is unavailable, and only where the defendant has

had a prior opportunity to cross-examine."  *Davis*, 126 S. Ct. at 2273 (citing *Crawford*,

541 U.S. at 53-54).  In *Barber v. Page*, 390 U.S. 719, 724-725 (1968), the Supreme

Court held that a witness is not "unavailable" for purposes of the Confrontation Clause

"unless the prosecutorial authorities have made a good-faith effort to obtain [her] presence at trial."  Defendant's opportunity to cross-examine a witness is satisfied when the cross-examination occurred under circumstances "closely approximating those that surround a typical trial."  *California v. Green*, 399 U.S. 149, 165 (1970).

If a Sixth Amendment violation is found, the court must determine whether the error was harmless, or whether the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

      b.    <u>Analysis</u>

Federal habeas corpus relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  Therefore, this Court is only concerned with Petitioner's claim that his Sixth Amendment right to confrontation was violated by the admission of Tashika's statements to Officer McFadden and finds that it was.

Tashika's statements to Officer McFadden were made when there was no emergency in progress.  Turner was being treated for her injuries by paramedics and Petitioner had been arrested and taken out of the house.  Like the statements given to police officers physically present at the scene of domestic assault in *Davis*, Tashika's statements "deliberately recounted, in response to police questioning, . . . potentially criminal past events."  *Davis*, 126 S. Ct. at 2278.  Although Tashika did show signs of having witnessed something traumatic, her statements were "neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation," and hence not merely nontestimonial "initial inquiries."  *Id*. at 2279.  Because Tashika's statements were testimonial, they were subject to the limitations of the

Confrontation Clause.

The Confrontation Clause requires that before a witness' statements may be introduced at trial, the witness must be unavailable and must have been subject to cross-examination. *Crawford*, 541 U.S. at 53-54. Tashika was found incompetent to testify and was never cross-examined by the defense regarding the statements made to Officer McFadden. Because cross-examination is a requirement regardless of the statements' reliability, the state court decision that Petitioner's Sixth Amendment right to confrontation was not violated by the introduction of Tashika's statements at trial was contrary to federal law. Crawford, 541 U.S. at 68-69 ("where testimonial statements are at issue, the only indicum of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."); *see Bockting v. Bayer*, 399 F.3d 1010, 1021 (9th Cir. 2005) (holding that state court decision which allowed use of child victim's hearsay statement to detective because of its reliability, without cross-examination, violated petitioner's Sixth Amendment and was therefore contrary to federal law), *amended*, 408 F.3d 1127 (9th Cir. 2005), *cert. granted sub nom.*, *Whorton v. Bockting*, 126 S.Ct. 2017 (2006) .

In this case, the Court of Appeal analyzed the claim under pre-*Crawford* law, finding that the statements qualified under the "firmly rooted" hearsay exceptions for spontaneous declarations that carry sufficient indicia of reliability for admission, citing *White v. Illinois*, 502 U.S. 346, 355, fn. 8 (1992). However, the Ninth Circuit has held that *Crawford* applies retroactively on habeas review. *Id*. (State court decision made before *Crawford* found to be contrary to federal law because in conflict with strictures of *Crawford*).

Although this Court finds that there was a Confrontation Clause violation, Petitioner is not entitled to habeas relief unless the admission of Tashika's statements had an actual and prejudicial effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht*, 507 U.S. at 637). Like the Court of Appeal,

this Court finds that the admission of Tashika's statements was harmless.  In examining harmlessness, this Court asks: "whether, in light of the record as a whole," the violation "'had a substantial and injurious effect or influence on the verdict.'"  *Brecht*, 507 U.S. at 638.

Although Tashika's statements were the only direct evidence that Petitioner had inflicted Turner's injuries, the circumstantial evidence of that fact was quite strong.  When police arrived at Petitioner's house, Turner appeared to have been recently beaten and she was crying.  Defendant was present at the house and had an injury to his hand.  Turner's friend, Yvette Daniels, testified that she had spoken with Turner the night before the assault and had heard no indication that Turner was already injured at that time.  As the Court of Appeal succinctly pointed out in conducting its harmlessness inquiry, "(g)iven this evidence, it strains credulity to think that Turner suffered such serious injuries, sought no medical attention, failed to mention her condition to Daniels, decided to falsely accuse defendant of beating her, and then waited until the middle of the night to call the police."  *People v. Cook*, No. 207515, slip op. at 14.

Moreover, the jury was made aware of the credibility issues arising out of Tashika's statements.  McFadden admitted on cross-examination that he failed to determine whether Tashika had spoken to her mother before he arrived and had been coached to accuse Petitioner.  RT at 265-66.  McFadden also stated that he did not ask Tashika whether she knew the difference between the truth and a lie.  *Id*. at 466-67.  Defense counsel specifically argued that the jury had no way to assess Tashika's credibility because she was not present at trial.  *Id*. at 683-85.  Defense counsel also argued that Turner's testimony was unclear on whether she talked to Tashika, although Turner had time to do so.  *Id*. at 684.  Finally, defense counsel reminded the jury that it was disputed whether Tashika could see into her parents bedroom from her bed.  *Id*.  Finally, there was evidence before the jury that defendant was angry with Turner for forcing him to move out and that the defendant had used force against Turner before,

1  although she had never been injured as seriously as she was on June 9, 1998, providing a

2  motive for the assault.

3      Although Petitioner's Sixth Amendment right to confrontation was violated by

4  McFadden reading Tashika's statements to him from the night of the assault trial, the

5  error did not have a substantial and injurious effect on the verdict and Petitioner is not

6  entitled to habeas relief on this issue. *See Brecht*, 507 U.S. at 638.

7  **II.    Exclusion of Impeachment Evidence**

8      Petitioner argues that he was denied his right to undermine Turner's credibility

9  through cross-examination because the trial court improperly excluded evidence that

10  Turner had committed welfare fraud, that Turner had abused Tashika, and that Turner

11  had suffered a misdemeanor conviction for prostitution.  Petitioner claims that the

12  evidence that Turner abused Tashika was relevant to show not only Turner's bad

13  character relevant to her credibility, but also to show that through physical abuse or the

14  threat of physical abuse, Turner could have forced Tashika to falsely accuse Petitioner.

15  The trial court considered the evidence and found that its probative value was

16  outweighed by the length of time needed to prove the offenses charged and that it could

17  confuse and prejudice the jury against Turner.

18      a.    Legal Standard

19      The right to cross-examine includes the opportunity to show not only that a

20  witness is biased, but also that the testimony is exaggerated or otherwise unbelievable.

21  *Fowler v. Sacramento County Sheriff's Dept*, 421 F.3d 1027, 1035 (9th Cir. 2005)

22  (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) (plurality)).   Even if cross-

23  examination is not certain to affect the jury's assessment of the witness's reliability or

24  credibility it may implicate the Sixth Amendment right to confrontation if "a jury 'might

25  reasonably' have questioned the witness's reliability or credibility in light of the cross-

26  examination." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

27      However, the Confrontation Clause does not prevent a trial judge from imposing

28

11

reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant. *See Van Arsdall*, 475 U.S. at 679.  The Confrontation Clause guarantees an opportunity for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).  A trial court's limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony, prejudices the defendant, and leaves the jury without sufficient information to evaluate the biases and motivation of the witness. *United States v. Bridgeforth*, 441 F.3d 864, 868 (9th Cir. 2006).  If the jury is given sufficient information to evaluate the witness's biases and motivations without the disputed material, there is no Confrontation Clause violation. *Id.*

To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1) the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *See United States v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999) (citations omitted); *see, e.g., Fowler*, 421 F.3d at 1041 (right to confrontation violated where trial court precluded cross-examination of victim, in prosecution for annoying or molesting a minor, as to prior accusations she had made); *United States v. Schoneberg*, 396 F.3d 1036, 1043 (9th Cir. 2005) (right of confrontation violated when trial court prevented defense from using cross to make a record from which to argue why the witness might be biased).

b.    <u>Analysis</u>

The Court of Appeal found that the trial court's decision to exclude the impeachment evidence did not violate the Sixth Amendment because the trial court has

large discretion in restricting the admission of evidence and limiting cross-examination, and the trial court balanced the benefits of admitting the evidence with the prejudice to the victim.  This decision is not contrary to, or an unreasonable application of, established federal law.  *See Van Arsdall*, 475 U.S. at 679.  The Confrontation Clause is normally satisfied when the defendant has the opportunity to show the weaknesses in the witness' testimony and undermine the witnesses credibility.  *Fowler*, 421 F.3d at 1035-36 (citing *Fensterer*, 474 U.S. at 22 and *Davis*, 415 U.S. at 316).  Although Petitioner was not able to impeach Turner using the particular evidence he complains was excluded, the defense was still able to thoroughly challenge Turner's motivations and her reliability as a witness.  *See Evans v. Lewis*, 855 F.2d 631, 633-34 (9th Cir. 1988) (no violation of Confrontation Clause where trial court restricted cross examination of prosecution witness whose bias and motivation had been clearly established and evidence sought to be introduced only cumulative on issue of credibility).

The Court of Appeal identified the many ways in which Turner's motive and the infirmities in her testimony were explored in front of the jury.  First, the jury learned that because Turner was anxious for Petitioner to move out of the house, she had a possible motive for falsely accusing him of assault.  Second, the jury learned that Turner regularly called the police in response to trivial confrontations between herself and Petitioner.  Specifically, the court noted that Turner admitted she had called the police when Petitioner disrespected her by calling her a name and when he put his bicycle where she did not want it.  Third, defense counsel pointed out inconsistencies between Turner's preliminary hearing testimony and her trial testimony regarding whether she heard defendant talk to his father on the phone.  Defense counsel also successfully rebutted Turner's testimony that during one incident she described at trial she had not been drinking with evidence that she had.

Moreover, Turner admitted that she did not report the rape to police or medical staff at the hospital and could not remember penetration.  She also did not remember

Petitioner actually beating her.  She did remember talking to Tashika, but denied that she told Tashika what to tell the police.  Defense counsel argued that Turner had sufficient time in which she could have coached Tashika.  Finally, Petitioner's mother contradicted Turner's testimony regarding the telephone conversation with Petitioner's parents after the assault.

The state court's finding that even with the exclusion of the impeachment evidence, the jury had sufficient evidence from which to assess Turner's credibility was not contrary to, or an unreasonable application of, established federal law.  *See Beardslee*, 197 F.3d at 384.

### III.    <u>Prior Acts of Violence</u>

Petitioner claims that his due process rights were violated when the court allowed the introduction of evidence of prior acts of domestic violence and then instructed the jury that the evidence could be used to "infer that the defendant had a disposition to commit the same or similar type of offense of domestic violence."  California Evidence Code section 1109 permits the use of evidence of domestic battery to show a defendant's propensity to commit such crimes.

a.    <u>Legal Standard</u>

Permitting a jury to hear evidence of prior crimes or bad acts may violate due process.  *See Marshall v. Lonberger*, 459 U.S. 422, 438-39 n.6 (1983); *Fritchie v. McCarthy*, 664 F.2d 208, 212 (9th Cir. 1981) (citing *Spencer v. Texas*, 385 U.S. 554, 561 (1967)).  However, a federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (use of evidence of prior conviction upheld when it showed intent because petitioner used the same method to perform both crimes).  A statute or rule of evidence allowing admission of evidence of prior crimes to show a propensity to commit the charged offense does not facially violate due process if

the evidence to be admitted is subject to a balancing test by the trial court.  *See United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001) (new federal rules of evidence allowing evidence of prior sexual offenses to show a propensity to commit the charged offense do not violate due process because evidence is still subject to trial court balancing test which provides for meaningful appellate review).

The Supreme Court has not addressed whether a state law permitting the use of "prior crimes" evidence to show propensity would violate due process. *Estelle*, 502 U.S. at 75 n.5.  Although the Supreme Court has not squarely decided whether a propensity instruction or prior crimes evidence violates due process, the Court has made clear that violations of due process occur only when the "fundamental fairness" of the trial is undermined.  *See id*. at 72-73.  The Court has also acknowledged that rules concerning the admissibility of prior crimes evidence vary by jurisdiction, but generally evidence is allowed to show motive, intent, malice, identity, an element of the crime, or to impeach the credibility of a testifying defendant.  *See Spencer v. Texas*, 385 U.S. 554, 560-61 (1967).

      b.  <u>Analysis</u>

The Court of Appeal rejected Petitioner's due process argument because the California Supreme Court had already decided that propensity evidence admitted under a statute (Cal. Evid. § 1108) similar to the one Petitioner complains of, but involving the admission of evidence of prior sex offenses, did not violate the Constitution.  Other California Courts of Appeal have applied the California Supreme Court's reasoning to challenges to section 1109.  This decision under state law was not contrary to, or an unreasonable application of federal law because the judge still weighed the probative value of the evidence against the prejudice to defendant before admitting it, the case against Petitioner for assault was strong, and the evidence was not particularly emotionally charged.  *See LeMay*, 260 F.3d at 1026 (the right to fair trial remains "adequately safeguarded" when the judge balances the benefits of admitting propensity

sex offense evidence with its prejudicial effect); *cf. Garceau v. Woodford*, 275 F.3d 769, 775-76 (9th Cir. 2001) (instructions permitting jury to consider priors for purposes of establishing propensity violates due process when balance of prosecution's case is not strong, other crime is same crime for which defendant is on trial, and evidence of prior is emotionally charged), *overruled on other grounds by* 538 U.S. 202 (2003).

Petitioner notes that in *McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993),  the Ninth Circuit found that the admission of propensity evidence violated due process. However, in *LeMay*, 260 F.3d at 1026-27, the Ninth Circuit explained that propensity evidence "will only sometimes violate due process, if it is of no relevance or if its potential for prejudice far outweighs what little relevance it might have."  The evidence that Petitioner had previously assaulted Turner while he was intoxicated was relevant, even though the previous assaults did not cause any injuries.

Moreover, the evidence was not overly prejudicial because the incidents which Turner described were brief and minor.  Turner testified that she had never been seriously injured or hospitalized before because of Petitioner. RT at 328, 323.  She also testified that one time when she told Petitioner she was calling the police in response to Petitioner calling her a "bitch," Petitioner said he "would do [her] in or something like that." *Id*. at 325.  Turner testified that there was one incident when "[Petitioner] was drinking and he got his foot against my chest."  Id. at 327.  She explained that she was laying on the bed which was on the floor and he put his foot against her chest and she "didn't like the force." *Id*.  Turner also testified that one time when she and Petitioner were in the car after Petitioner had been drinking, she got out of the car to avoid driving with him while he was intoxicated and ran to a vacant house. *Id.*  She stated that "[Petitioner] grabbed me - - he grabbed me and I was against the wall." *Id.* at 327.

Before deliberations, the judge gave a propensity instruction to the jury, but the instruction did not state that Petitioner had in fact previously committed acts of domestic violence, or that if the jury found that he had, he was necessarily guilty of the charged

offense.  *Id*. at 719; *see Estelle*, 502 U.S. at 75 (held that jury instruction in murder trial did not violate due process when understood by the jury to mean that "*if* [the jury] found a 'clear connection' between the prior injuries [of deceased] and the instant injuries, and *if* it found that McGuire had committed the prior injuries, then it could use that fact in determining that McGuire committed the [murder]") (emphasis in original).

Finally, the evidence that Petitioner committed the acts he was convicted of, even without the propensity evidence and instruction, was strong.  As the Court of Appeal pointed out, and this Court previously noted, it "strains credulity" to think that Turner suffered serious injuries at the hands of someone other than Petitioner, but waited until the middle of the night for Petitioner to come home and fall asleep before calling the police.  The Court of Appeal's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, established Supreme Court law.

## IV.    Insufficient Evidence

Petitioner contends that there was insufficient evidence from which the jury could find that he raped Turner.  He argues because Turner testified that she could not distinctly recall Petitioner penetrating her vagina, rape was not established as a matter of law.  Penetration is an element of rape under Pen. Code § 263.

a.  Legal Standard

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 US 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *See id.* (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), *amended*, 768 F.2d 1090

17

1    (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, *and cert. denied*, 475 U.S. 1049 (1986);

2    *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).

3           If confronted by a record that supports conflicting inferences, a federal habeas

4    court "must presume – even if it does not affirmatively appear on the record – that the

5    trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

6    resolution." *Jackson*, 443 U.S. at 326.  A jury's credibility determinations are therefore

7    entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

8    The prosecution need not affirmatively rule out every hypothesis except that of guilt.

9    *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326).   The

10   existence of some small doubt based on an unsupported yet unrebutted hypothesis of

11   innocence therefore is not sufficient to invalidate an otherwise legitimate conviction.  *See*

12   *Taylor v. Stainer*, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding

13   petitioner's fingerprints which government failed to rebut unsupported by evidence and

14   therefore insufficient to invalidate conviction).

15          Circumstantial evidence and inferences drawn from evidence introduced at trial

16   may be sufficient to sustain a conviction.  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.

17   1995).  Mere suspicion and speculation cannot support logical inferences, however.  *Id.*;

18   *see*, *e.g.*, *Juan H. v. Allen*, 408 F.3d 1262, 1278-79 (9th Cir. 2005) (granting writ where,

19   after resolving all conflicting factual inferences in favor of prosecution, only speculation

20   supported petitioner's conviction for first degree murder under a theory of aiding and

21   abetting).

22          b.  Analysis

23          The Court of Appeal considered Petitioner's claim under state and federal law and

24   found that Turner's testimony was sufficient to establish sexual penetration, and because

25   any discrepancies in Turner's testimony were properly considered by the jury, it cannot

26   be said that "it was physically impossible for the rape to occur, that the jury's belief that

27   the rape occurred is morally shocking, or that it is inherently improbable that defendant

28                                                    18

sexually penetrated Turner." *Cook*, slip op. at 30.  This decision was not contrary to, or an unreasonable application of, established federal law.  *See Jackson*, 443 U.S. at 326 (holding that even if there is conflicting evidence, a reviewing court must presume that the jury decided in favor of the prosecution).

Turner plainly testified that "[Petitioner] had sex with me."  RT at 316.  In response to the prosecutor's question "Did he put his penis into your vagina," Turner responded "Yes."  *Id*. at 317.  Additionally, on redirect examination, Turner responded "Yes" when the prosecutor asked "And then, in fact, he had sex with you?"  *Id*. at 411.  From this testimony, a reasonable trier of fact could find that Petitioner did have sex with Turner, meaning that he did insert his penis into her vagina.  Any variance in Turner's testimony on cross-examination or any differences between her preliminary hearing testimony and trial testimony may have undermined Turner's reliability.  However, if the jury was satisfied that her statements on direct examination were credible, it is not the province of this Court to upset the verdict.  *See Bruce*, 376 F.3d at 957 (when court could not say that molestation of which petitioner was charged was "physically impossible and simply could not have occurred as described," it had no reason for overturning the conviction).  As such, Petitioner's claim fails.

**V.    Ineffective Assistance of Counsel**

Petitioner contends that he is entitled to relief based on the ineffective assistance of trial counsel.  Respondent argues that Petitioner's claims must be denied based on procedural default or, in the alternative, on the merits.

A.   Procedural Default

Respondent first argues that the claims were procedurally defaulted in state court and that this Court should deny federal review based on a finding of an "independent and adequate state procedural grounds for denying petitioner's claim(s)."  *See,* Respondent's Memorandum in Support of Answer at p. 50 (docket no. 12).  Petitioner claims that although his ineffective assistance of counsel claim was dismissed in the state court for

procedural reasons, this Court should review his claims of ineffective assistance on the merits.  *See*, Traverse at p. 15 (docket no. 15).

I.   Legal Standard

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

In *Coleman*, the Court created a conclusive presumption that there is no adequate and independent state ground for a state court decision when (1) the decision "fairly appears" to be based on federal law, or is interwoven with it, and (2) the adequacy and independence of the state law ground is not clear from the face of the opinion.  *See Coleman*, 501 U.S. at 732-35.  That is, "if the decision of  the last state court to which the petitioner presented his federal claims fairly appears to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition."  *Id* at 735; *accord Harris v. Reed*, 489 U.S. 255, 260-65 (1989); *Michigan v. Long*, 463 U.S. 1032, 1041 (1983) (direct review); *Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).

To be "adequate" the state procedural bar cited must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal

quotations and citation omitted), *cert. denied*, 520 U.S. 1204 (1997).[3]  A federal court "should not insist upon a petitioner, as a procedural prerequisite to obtaining relief, complying with a rule the state itself does not consistently enforce." *Siripongs*, 35 F.3d at 1318; *see also Wells*, 28 F.3d at 1010 (Oregon Supreme Court's practice of declining to consider claims not explicitly raised in petition not consistently enforced; no procedural default).

The state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir.), *cert. denied*, 540 U.S. 938 (2003).

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.  The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule.  Once having done so, however, the ultimate burden is the state's.

*Id.*

The federal court must look at the actual practice of state courts in enforcing their procedural bars, and not just at the rule as stated in state court decisions.  *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004).  The consistent application rule requires application of the procedural rule only in the "vast majority of cases."  *Duggers v. Adams*, 489 U.S. at 411 n.6; *see also Shumway v. Payne*, 223 F.3d. 982, 989 (9th Cir. 2000) (one case not sufficient to show rule not consistently applied); *Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir. 1996)  (procedural bar consistently applied where Nevada Supreme Court addressed merits of defaulted claims only in one or two cases).  If a federal court concludes that an asserted procedural bar was not an independent and adequate ground for the state court decision, the federal court must consider the claim on the merits; if the state courts never reached the merits of the claim,

---

[3]*Accord Dugger v. Adams*, 489 U.S. 401, 410-411 n.6 (1989); *Johnson v. Mississippi*, 486 U.S. 578, 587-89 (1988); *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994); *Harmon v. Ryan*, 959 F.2d 1457, 1461-63 (9th Cir. 1992).

21

the federal court reviews the claim *de novo*.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (holding that deferential AEDPA standard of review does not apply in this context).

ii.  <u>Analysis</u>

The Superior Court found that Petitioner's claims were procedurally barred for several reasons.  However, the only procedural grounds upon which the state court relied for denying the entire habeas petition (as opposed to Petitioner's individual claims) was the trial court's second finding of procedural default.  The court cited *Lincoln v. Fox*, 168 Cal. App. 2d 31, 33 (Cal. App. 1959) and *In Re Swain*, 34 Cal.2d 300, 304 (1949) as a basis for the decision, finding that Petitioner failed to "allege with particularity the facts upon which he would have a final judgment overturned."  Respondent's Exhibits in Support of Answer ("Resp. Exh.") D-2 at 2.  Petitioner acknowledges in his traverse that the state court's denial was "procedural," but argues that the dismissal for procedural reasons requires this Court to review his claims on the merits.  Petitioner does not appear to make any arguments pertaining to whether the claims raised in the petition are procedurally defaulted by resolution on an adequate and independent ground in the state courts.

However, with regard to Respondent's arguments that the state court decisions rest on adequate and independent state grounds precluding federal review,  this Court finds that Respondent has failed to meet their burden under *Bennett v. Mueller* of establishing the adequacy of the procedural bar, specifically that it was consistently applied and well-established at the time of the alleged default.  *See Bean*, 96 F.3d at 1129.  As the Ninth Circuit has noted, it is most just to place the burden of establishing such a default with Respondent, as it is "the state, not petitioner, often appearing pro se, who has at its hands the records and authorities to prove whether its courts have regularly and consistently applied the procedural bar."  *Bennett*, 322 F.3d at 585.  Nor has Respondent made such a showing as to a procedural bar for any of Petitioner's individual

22

claims.  *Id.*  As such, this Court finds that Respondent has not established that federal review is barred by the existence of an adequate and independent state ground for the state court's decision.

### B.  Merits of Ineffective Assistance of Counsel Claim

Respondent argues that Petitioner's claims of ineffective assistance must be denied, as Petitioner has failed to show that he was prejudiced by counsel's deficient performance.  The highest court to address Petitioner's claims in a reasoned decision was the state trial court, where Petitioner initially brought his habeas petition.  Resp. Exh. D-2; E-2; F-2.

### I.  Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*

To prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88.  Additionally, Petitioner must establish that he was prejudiced by counsel's deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  *Id.*

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  *See Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th

23

1    Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was

2    deficient after determining Petitioner could not establish prejudice), *cert. denied*, 516

3    U.S. 1124 (1996).

4         The *Strickland* framework for analyzing ineffective assistance of counsel claims is

5    considered to be "clearly established Federal law, as determined by the Supreme Court of

6    the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Williams*

7    *(Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000). In a federal habeas challenge to a state

8    criminal judgment, a state court's conclusion that counsel rendered effective assistance is

9    not a fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). Both

10   the performance and the prejudice components of the ineffectiveness inquiry are mixed

11   questions of law and fact. *See Strickland* 466 U.S. at 698. Claims of ineffective

12   assistance therefore require a review of the record as a whole.

13        A petitioner can make out a claim of ineffective assistance of counsel only by

14   pointing to specific errors made by trial counsel and showing that these errors were not

15   the result of reasonable professional judgment. *See United States v. Cronic*, 466 U.S.

16   648, 666 (1984); *Strickland*, 466 U.S. at 690. Also, judicial scrutiny of counsel's

17   performance must be highly deferential, as a court must indulge a strong presumption

18   that counsel's conduct falls within the wide range of reasonable professional assistance.

19   *Strickland*, 466 U.S. at 689. When counsel chooses not to investigate a theory, her

20   decision "must be directly assessed for reasonableness in all the circumstances." *Silva v.*

21   *Woodford*, 279 F.3d 825, 836 (9th. Cir. 2002)(quoting *Strickland*, 466 U.S. at 491). A

22   reasonable investigation is one which would enable counsel to make informed decisions

23   about how best to represent her client. *Avila v. Galaza*, 297 F.3d 911, 924 (9th Cir.

24   2002).

25        A habeas petitioner has the burden of showing through evidentiary proof that

26   counsel's deficient performance caused him prejudice. *See Toomey v. Bunnell*, 898 F.2d

27   741, 743 (9th Cir.), *cert. denied*, 498 U.S. 960 (1990); *see also Rios v. Rocha*, 299 F.3d

28

                                          24

796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

ii. <u>Analysis</u>

Upon review of Petitioner's ineffective assistance claims, this Court finds that Petitioner has not met his burden of establishing that his attorney's conduct fell below an objective standard and that he was prejudiced by such deficiencies. *See Strickland*, 466 U.S. 668, 687-88, 694 (1984). In addressing Petitioner's claims, the trial court found that the petition raised three separate categories of ineffective assistance in the petition: trial counsel's failure to impeach the victim, to investigate the case, and to call an expert at trial. All three claims were denied under state law.

The petition itself is not organized into specific claims of ineffectiveness on the part of counsel. Instead it includes pages of general complaints, without any evidentiary support, some of which do not appear related to Petitioner's case (for example, statements which allege the failure to call experts in eyewitness identification and DNA). Under one header, Petitioner has identified counsel's "failure to adequately investigate Petitioner's alibi and call alibi witnesses to testify at trial and expert witnesses." However, nowhere does Petitioner identify any specific witnesses, whether they were available at the time of trial or what they would have said in Petitioner's defense. Because Petitioner's mother was called as a witness to testified that she spoke to Petitioner at home that night, it is not clear whether this claim is directed to Petitioner's case, or is related to another case whose briefing Petitioner used in bringing his claims in state court.

Petitioner has also separately identified a claim that counsel failed to "hire an expert on drug and alcohol abuse" (regarding Turner) under a separate header. However, Petitioner fails to offer any evidentiary proof of any available testimony or evidence that would have been favorable to his defense in support of this claim.

The trial court denied Petitioner's claim based on counsel's failure to adequately

attack the victim's credibility, finding that the trial court itself had refused to allow defense counsel to cross examine the victim using a "substantial amount of impeachment material."  The court denied this claim, finding it been argued on appeal and could not, therefore, be raised again in a habeas petition.  However, the trial court also implicitly found that counsel's failure to impeach the victim was attributable to the court's disallowing impeachment with the evidence counsel had uncovered, rather than to a failure on his part.  Resp. Exh. D-2 at 3 ("(I)t appears that the attorney gathered a substantial amount of impeachment material however the trial court excluded it from evidence.")  As discussed in section II of this Court's order, defense counsel did in fact collect significant evidence that would impeach Turner, but the trial court found it inadmissible.  As such, Petitioner has failed to show that counsel's failure to impeach the witness with this evidence constitutes deficient performance.

The trial court further found with regard to Petitioner's claims of ineffectiveness based on counsel's failure to investigate or hire an expert witness, that the petition failed to present a *prima facie* claim for relief.  D-2 at p. 3-4.  The trial court noted that Petitioner failed to provide any allegations or evidentiary proof that additional investigation would have turned up evidence useful in Petitioner's defense, or "a declaration or affidavit, that a different expert would have something helpful to say about Petitioner's case."  Under Ninth Circuit authority, Petitioner bears the burden of establishing  through evidentiary proof that counsel's deficient performance caused him prejudice.  *See Toomey*, 898 F.2d at 743.  It cannot be said that the trial court's finding that he failed to do so is an unreasonable interpretation of established federal law.  To obtain relief, Petitioner must show that counsel was unreasonable for not investigating *particular* evidence and that the failure to have such evidence at trial caused him prejudice.  *Alcala v. Woodford*, 334 F.3d 862, 890-92 (9th Cir. 2003) (failure to investigate crime scene, where defense could have presented testimony of forensic expert that alleged murder weapon could not have been the murder weapon).

Finally, the trial court found with regard to Petitioner's claim that counsel failed to obtain expert testimony, that he did not explain "that a different expert would have had something helpful to say about Petitioner's case." Resp's Exh. D-2 at p. 4. This Court agrees that to state an ineffective assistance claim, Petitioner must describe what type of expert would have been beneficial to his defense, what exactly this expert would say that assisted in his defense, and why his attorney was incompetent for failing to retain such an expert. Petitioner's allegation, without more, is insufficient to establish ineffective assistance and the state court's finding is not contrary to or an unreasonable interpretation of established Supreme Court precedent. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (a decision not to pursue testimony by a psychiatric expert is not unreasonable when the evidence does not raise the possibility of a strong mental state defense). As such, Petitioner's claims of ineffective assistance of counsel fail.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: August 28, 2006

_____
JEFFREY S. WHITE
United States District Judge